UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 18-CR-40042-TSH |
| ) | |
| SETH DECOTEAU ) | |

REPLY TO GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

The defendant in this case, Seth Decoteau, has submitted a sealed motion to the Court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] *See* Docket Entry ("DE") 92, 94. The Court subsequently agreed to extend Mr. Decoteau's self-report date to FCI Fort Dix, NJ, from November 6, 2020, to December 7, 2020 and set a hearing date for the motion on November 23, 2020. *See* DE 96, 97. The government filed an opposition to Mr. Decoteau's compassionate release request on November 9, 2020 which included an attached exhibit (affidavit of Dr. Turner Foster in response to inmate civil suit relating to inadequate mitigation efforts at the jail during the pandemic). The government then filed a more recent supplement to its opposition on November 13, 2020, that contained an updated affidavit from Dr. Kimberly Codger (affidavit filed in response to a second inmate civil suit related to allegations of inadequate coronavirus mitigation efforts at FCI Fort Dix during the pandemic). Mr. Decoteau offers this reply in order to address a couple of points raised in the government's opposition memorandum and supplement.

1. **The Court can consider Mr. Decoteau's compassionate release request by waiving the administrative remedies exhaustion requirement and even though he has not yet reported for service of his sentence with the BOP.**

---

[1] The materials filed contain health and other information about Mr. Decoteau this is of a personal nature.

1

This Court can waive the administrative remedies exhaustion requirement as have Judges Talwani and Young in compassionate release orders that they have issued in *United States v. Guzman-Soto*, 18-10086-IT and *United States v. Ramirez*, 17-10328-WGY.  In Judge Talwani's order, she stated that "after a defendant makes a request to the warden, the court has the authority and discretion under 18 U.S.C. § 3582(c)(1)(A) to waive the statutory thirty-day waiting period based on exigent circumstances."  *See United States v. Guzman-Soto*, No. 18-10086-IT, DE 56, pp. 1.  Similarly, Judge Young determined that the exhaustion requirement could be waived by the Court in the *Ramirez* case because as Judge Talwani did in *Guzman-Soto*, he concluded that the tolling of the 30 day period cited to in the compassionate release statute was not a jurisdictional bar to the Court considering the defendant's motion.  *See Ramirez*, No. 17-10328-WGY, DE 121, pp. 17-18.  He goes on to say that the exhaustion requirement of section 3582(c) is not jurisdictional because it does not require an inmate to complete a full BOP administrative appeal process, which would take much longer than 30 days, before petitioning the Court.  Judge Young read this as an expression of Congressional intent in the statute that recognized the urgency of compassionate release claims for individuals who have serious health conditions during a pandemic.  Given how quickly this virus can spread in a prison setting, even waiting 30 days could be a life-threatening proposition.

The government's citation of Judge Talwani's denial of a compassionate release request on procedural grounds due to the defendant's failure to exhaust the statutory administrative remedies exhaustion requirement in *United States v. Devin Sloane*, No. 19-10117-IT, is inapposite.  Judge Talwani's order in *Sloane* made it clear that the defendant in that case had not even taken the preliminary step of making a compassionate release request to the Warden of the facility of designation.  *Id.* at DE 647, pp. 2.  Further, she stated that the defendant did not

present a sufficiently urgent compassionate release request based on a "life-threatening condition to support a claim that such exhaustion requirements may be excused during this national emergency." *Id*.

In further reading Judge Talwani's decision in *Sloane*, it becomes clear that the defendant in that case presented little if no evidence of a pre-existing medical condition that would have potentially subjected him to severe health complications, and even death, if he contracted the coronavirus. At the end of her Order in *Sloane*, Judge Talwani laments that the "ongoing pandemic raises a critical question of whether Congress and the President, in addressing this national emergency, should afford courts or the Bureau of Prisons greater flexibility regarding continued imprisonment of non-violent offenders who have served the majority of their sentences." *Id.* Reading between the lines, one can infer that the judge would have preferred to have the flexibility to consider a compassionate release request from an individual who did not present the Court with evidence that she or she had a serious health condition but who may have otherwise qualified for relief based on other circumstances.

Unlike the defendant in the *Sloane* case, Mr. Decoteau has, through counsel, made a compassionate release request to the Warden of FCI Fort Dix on November 2, 2020. *See* Mr. Decoteau's Compassionate Release Motion filed Under Seal, Exhibit B. Secondly, Mr. Decoteau's situation is also distinguishable from the *Sloane* fact pattern in that he has presented this Court with medical evidence indicating that he has been diagnosed with Chronic Obstructive Pulmonary Disease ("COPD"), concomitant asthma, and that he is clinically obese. These are co-morbidities that are recognized by the Center for Disease Control ("CDC) as creating a heightened risk of serious illness and or death should an individual afflicted with these conditions become infected with COVID-19. Mr. Decoteau's case therefore does present this

Court with an emergency situation, placing a medically vulnerable individual into a BOP facility which is currently a COVID-19 hot spot, which is sufficiently urgent to excuse the statutory exhaustion requirement.

This Court should also dismiss the government's assertion that it cannot consider Mr. Decoteau's compassionate release request because he is not in custody or "incarcerated". This is not a procedural bar in any respect. In fact, many federal courts have granted compassionate release requests in cases where the defendant had not yet surrendered for service of his or her sentence. *See United States v. Slaughter,* 7:19-cr-00002-BO, ECF 76 (E.D.N.C. November 5, 2020) (granting compassionate release after waiving administrative remedy exhaustion requirement for a defendant who had not yet reported for a 6 month sentence and had been diagnosed with kidney disease and hypertension); *United States v. Nazario-Montijo*, 3:17-cr-00278-JAG, ECF 273 (D.P.R. Sep. 17, 2020) (granting compassionate release in sentence where defendant was sentenced pre-COVID to 24 months pursuant to a binding plea agreement, his self-surrender date extended, and he suffered from obesity and mental health issues that could be exacerbated by BOP mitigation measures); *United States v. Konopoka*, 1:17-cr-616, ECF 117 (N.D. Ill. Sep. 10, 2020) (granting reduction in sentence where, after the sentence was imposed, defendant received a new and serious diagnosis and in light of the global pandemic); *United States v. Butler*, 1:14-cr-00445, ECF 188 (N.D. Ill. Apr. 6, 2020) (granting reduction in sentence where, after the sentence was imposed, defendant's severe medical conditions worsened).

2. **FCI Fort Dix is currently dealing with a COVID-19 outbreak of dangerous proportions that is attributable to BOP's general mismanagement of the pandemic for inmates in its charge.**

Earlier this year, FCI Elkton had one of the worst COVID-19 outbreaks in the country. https://www.burlingtoncountytimes.com/story/news/2020/11/05/fort-dix-attorneys-ordered-

4

detail-covid-19-response-cases-top-200/6176666002/.  In total, 9 inmates have died there who were infected with COVID-19 which is the highest death toll for any BOP facility according to the numbers on the agency's website.  https://www.bop.gov/coronavirus/.  In addition, the BOP currently reports that FCI Elkton has the second highest number of coronavirus "recovered" inmates (905) in the entire country.[2]  Surprisingly, the BOP's response to managing the emergency at FCI Elkton was to move Elkton inmates to two other BOP facilities in order to allow for greater opportunities at social distancing.  *See* DE 100, Government's Exhibit A, affidavit of Dr. Kimberly Kodger.  One of these facilities was FCI Fort Dix.  *Id.*

On September 28, 2020, the first transfer of 64 inmates from FCI Elkton to Fort Dix took place.  Of the 64 inmates, 6 tested positive for coronavirus upon arrival in New Jersey.  The other 58 inmates who came with these individuals were placed in a quarantine unit at Fort Dix.  *Id.*  Incredibly, this discovery did not deter the BOP from continuing to transfer Elkton inmates to Fort Dix.  On October 6, 2020, another 65 inmates were transferred and another 6 tested positive for coronavirus.  *Id.*  The 59 COVID negative inmates who were exposed to those who tested positive during their trip from Ohio on October 6 were placed on different floors of the same unit building.  *Id.*  On October 28, 2020, another 77 inmates were moved from Elkton to Fort Dix and another 5 in that group tested positive for coronavirus.  *Id.*  In total, from September 28 through October 28, 2020, 298 inmates from FCI Elkton were moved to Fort Dix FCI.  Of those 298 inmates, 206 were exposed to inmates who had tested positive for coronavirus during their transport from Ohio to New Jersey.

According to the affidavit of Fort Dix FCI Associate Warden Dr. Kimberly Kodger, as of November 10, 2020, the jail recorded 229 inmates who were actively infected with coronavirus.

---

[2] The BOP reports that only Seagoville FCI in Texas has more coronavirus "recovered" inmates at 1277.  Of note, however, is that Seagoville FCI has reported only 4 COVID-19 related deaths.

5

*Id.*  The media has picked up on the outbreak at Fort Dix FCI and is reporting that the health emergency there is wholly attributable to the influx of inmates from FCI Elkton and BOP's questionable decision to move them there in the first place.

https://www.njspotlight.com/video/fort-dix-covid-19-cases-continue-to-rise/, https://www.inquirer.com/news/fci-fort-dix-coronavirus-covid-outbreak-transfers-elkton-cory-booker-bob-menendez-20201110.html.  FCI Fort Dix is now reporting the highest number of coronavirus infections at any BOP facility in the country.  *Id.*  Given the level of mismanagement the BOP has demonstrated in this situation thus far, this Court cannot place any confidence in the mitigation measures that Dr. Kodger has outlined in her affidavit.  Fort Dix FCI's ad hoc approach to dealing with this emergency has clearly been ineffective and unless and until more robust testing and social distancing strategies are put into place for the inmate population, the facility will be a public health threat to the local community and to any person with pre-existing health problems who is designated to serve time there for months to come.

https://whyy.org/articles/covid-19-outbreak-inside-fort-dix-prison-is-spreading/.

## CONCLUSION

This Court should grant Mr. Decoteau's compassionate release request given his diagnoses of COPD, concomitant asthma, and clinical obesity.  This supplemental memorandum has clarified for the Court that there is no procedural bar to doing so even if he has not yet surrendered for his sentence.  Despite the government's attempts to minimize the severity of Mr. Decoteau's health problems, particularly the COPD which is repeatedly described as "early stage" and "well managed", it cannot eliminate the dangers presented to Mr. Decoteau of being exposed to coronavirus in the deadly environment that currently exists at Fort Dix FCI.

Combining a COVID-19 infection with a COPD diagnosis, whether recently diagnosed or not, is a risk that should not be taken.

This Court cannot trust Fort Dix FCI to manage Mr. Decoteau's serious health conditions or to protect him from becoming infected. The Warden of Fort Dix FCI, David E. Ortiz, has stated in his October 22, 2020 memorandum requesting a moratorium on movement of inmates into and out of the facility that "due to the unique infrastructure of this facility, social distancing is extremely difficult." *See* DE 100, Exhibit A, pp. 30. This is a prison that is now an understaffed and under-resourced COVID-19 field hospital given the large number of infected individuals present. Mr. Decoteau would be at risk if he went to FCI Fort Dix for 30 days let alone 16 months. His circumstances have changed dramatically since he was sentenced by this Court. He should not be condemned to risk his health and or life when other options are available to the Court.

SETH DECOTEAU
By his attorney,
 */s/ Oscar Cruz, Jr.*
Oscar Cruz, Jr.
B.B.O. #630813
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061

CERTIFICATE OF SERVICE

I, Oscar Cruz, Jr., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 14, 2020.

 */s/ Oscar Cruz, Jr.*
Oscar Cruz, Jr.