UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES, <br>                Plaintiff, <br><br> v. <br><br> SETH DECOTEAU, <br>                Defendant. | CIVIL ACTION <br> NO. 4:18-40042-TSH |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (Docket No. 95)**

**DECEMBER 1, 2020**

**HILLMAN, D.J.,**

Seth Decoteau ("Mr. Decoteau" or "Defendant") pled guilty to one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), and one count of Possession of Unregistered Firearms in violation of 26 U.S.C. § 5861(d). On September 25, 2020, I sentenced him to 16 months of imprisonment followed by three years of supervised release. The Bureau of Prisons (BOP) assigned him to FCI Ft. Dix to serve his sentence.

On November 3, 2020, three days before his self-surrender date at FCI Ft. Dix, Mr. Decoteau filed a motion asking the Court to reduce his sentence to home confinement under 18 U.S.C. § 3582(C)(1)(A)(I) in light of his newly-diagnosed health conditions and the surge of COVID-19 cases at FCI Ft. Dix. (Docket No. 95). I extended Mr. Decoteau's self-surrender date to December 7, 2020 to adjudicate his motion and held a hearing on November 23, 2020. (Docket No. 96).

1

**Discussion**

Section 3582(c) begins with the general principle that "a court may not modify a term of imprisonment once it has been imposed . . ." Upon motion of the Director of the BOP or a defendant,[1] however, a court "may reduce the term of imprisonment (and may impose a term of probation and supervised release with or without conditions that does not exceed the unserved portion of the original terms of imprisonment), after considering the factors set forth in § 3553(a) to the extent that they are applicable, if it finds that ". . . extraordinary and compelling reasons warrant such a reduction." *Id*. § 3582(c)(1)(A).

I do not find that Mr. Decoteau's recently diagnosed Stage 1 Chronic Obstructive Pulmonary Disease (COPD), concomitant asthma, and obesity constitute extraordinary and compelling reasons to reduce the Defendant's sentence. Mr. Decoteau is 39 years old and in good health. According to the Centers for Disease Control and Prevention, obesity and COPD put individuals at an increased risk of a severe course of illness if they contract COVID-19, but the Defendant's weight barely classifies him as obese and his Stage 1 COPD is under control.[2] As recently as September 15, 2020, medical records classified him as overweight rather than obese. (Docket No. 95-1 at 4-5). Per an October 29, 2020 letter from his physician, the Defendant's BMI is now 31.9, which is a borderline obesity diagnosis. (*Id.* at 2). Under the CDC guidelines, a BMI > 30 indicates increased risk of severe illness from virus that causes COVID-19.

Stage 1 COPD is the least advanced stage of the disease. Mr. Decoteau has responded well to bronchodilator medication. (Docket No. 95-2 at 1). October 2020 lung function studies

---

[1] The Defendant must first exhaust his administrative remedies under 18 U.S.C. § 3582(c)(1)(A)(i).
[2] CDC, CORONAVIRUS DISEASE 2019 (COVID-19): PEOPLE WITH CERTAIN MEDICAL CONDITIONS, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#copd (last visited on Nov. 23, 2020).

from his medical records show that his lung volume is within normal limits; a spirometry (lung function) test showed a mild decrease in air flow volume, and diffusion (how efficiently oxygen passes from the lungs into the bloodstream) was only mildly decreased. (Docket No. 95-1 at 3). Medical records do not indicate that the Defendant is experiencing any respiratory symptoms from either COPD or asthma. (*Id.* at 4,7,11,13). According to the Mayo Clinic, COPD symptoms "often don't appear until significant lung damage has occurred. . ."[3]

Mr. Decoteau already received a below guidelines sentence—any further reduction would inappropriately minimalize the danger of his conduct. When federal law enforcement agents searched Mr. Decoteau's home, they discovered nine unregistered firearms, a bulletproof vest, and more than 1,200 rounds of ammunition. The weapons included assault rifles with high capacity magazines and "ghost guns" —guns "made from partially build frames, which are drilled and assembled into fully operational guns, thus evading serializing, registration, and purchasing regulations." (Docket No. 87 at 2-3).

Nonetheless, I am troubled by the Bureau of Prisons' decision to assign Mr. Decoteau to serve his sentence at FCI Ft. Dix, given the rampant COVID-19 breakout at that facility. During an unprecedented pandemic, facing a disease for which no vaccine or cure is yet available, and given the current conditions at FCI Ft. Dix, it is inexplicable that the BOP has not changed Mr. Decoteau's assigned facility in the two months since his sentencing. Currently, FCI Ft. Dix has the largest number of COVID-19 cases among the federally operated facilities tracked on the BOP's website: 303 inmates and 28 staff have tested positive.[4] Furthermore, *by the Government's*

---

[3] MAYO CLINIC, PATIENT CARE & HEALTH INFORMATION: COPD, https://www.mayoclinic.org/diseases-conditions/copd/symptoms-causes/syc-20353679 (last visited Nov. 23, 2020).
[4] BOP, COVID-19 CASES, https://www.bop.gov/coronavirus/ (last accessed on Dec. 1, 2020).

*admission*, the situation at FCI Ft. Dix has deteriorated to the point that the BOP instituted a 25-day moratorium on all incoming prisoner transfers and "delivery of routine and chronic healthcare [has become] increasingly difficult." (Docket No. 100-1 at 29-31).[5] While the outbreak appears to be limited to one housing unit and the Specialized Housing Unit, the virus is highly contagious and there is no staff testing program. (Docket No. 100-1 at 4-6).

I do not discredit the substantial efforts that the BOP has made at FCI Ft. Dix to prevent the spread of COVID-19, which include creating isolation and quarantine units, establishing detailed procedures for transitioning inmates between housing units based on testing, reducing inmate movement and opportunities for close contact, cancelling visitation and limiting work by offsite contractors, and frequent scheduled cleaning and sanitizing. (*See* Docket Nos. 98 at 10; 100-1 at 1-4, 12-19, 21, 33). It is my expectation that with time these preventative measures will prevail, and the present outbreak will be controlled. But until then, the BOP has significantly limited my options by failing to designate an appropriate facility for Mr. Decoteau to serve his sentence.

Accordingly, I am extending Mr. Decoteau's self-report date from December 7, 2020 to **February 19, 2021**. The Clerk will coordinate a date with the parties for a status hearing on or about **January 25, 2021**. At that time, I will reassess whether conditions have improved so that FCI Ft. Dix is a suitable facility for Mr. Decoteau or ascertain whether he has been directed to report to an alternative facility.

**SO ORDERED.**

*/s/ TIMOTHY S. HILLMAN*
**DISTRICT JUDGE**

---

[5] The moratorium began on October 29, 2020 and ended on November 23, 2020. (Docket No. 98 at 10).