UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES,** <br> Plaintiff, <br> v. <br> **SETH DECOTEAU,** <br> Defendant. | CIVIL ACTION <br> NO. 4:18-40042-TSH |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (Docket No. 95)**

**MARCH 16, 2021**

**HILLMAN, D.J.,**

Seth Decoteau ("Mr. Decoteau" or "Defendant") pled guilty to one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), and one count of Possession of Unregistered Firearms in violation of 26 U.S.C. § 5861(d). On September 25, 2020, I sentenced him to 16 months of imprisonment followed by three years of supervised release. The Bureau of Prisons (BOP) assigned him to FCI Ft. Dix to serve his sentence.

On November 3, 2020, three days before his self-surrender date at FCI Ft. Dix, Mr. Decoteau filed a motion asking the Court to reduce his sentence to home confinement under 18 U.S.C. § 3582(C)(1)(A)(I) in light of his newly diagnosed health conditions and the record-setting surge of COVID-19 cases at FCI Ft. Dix. (Docket No. 95). Without objection from the Government, I extended Mr. Decoteau's self-surrender date from December 7, 2020 to March 19, 2021 so that the Court could monitor changes in conditions at FCI Ft. Dix or ascertain whether the Bureau of Prisons decided to reassign Mr. Decoteau to an alternative, safer facility. (Docket Nos. 96, 103, 112, 114).

1

On March 15, 2021, I heard from Mr. Decoteau and the Government and determined that further extension of Mr. Decoteau's March 19, 2021 self-report date was not warranted because of dramatic improvement of conditions at FCI Ft. Dix. Whereas the Bureau of Prisons reported approximately 790 cases at FCI Ft. Dix the height of the breakout in January 2021, today there are only 21 inmate and 41 staff infections. Furthermore, 183 staff and 161 inmates have already been vaccinated, reducing the risk of a future surge akin to December 2020 to January 2021.

Remaining before the Court is Mr. Decoteau's Motion for Compassionate Release. (Docket No. 95).

## Discussion

Section 3582(c) begins with the general principle that "a court may not modify a term of imprisonment once it has been imposed . . ." Upon motion of the Director of the BOP or a defendant,[1] however, a court "may reduce the term of imprisonment (and may impose a term of probation and supervised release with or without conditions that does not exceed the unserved portion of the original terms of imprisonment), after considering the factors set forth in § 3553(a) to the extent that they are applicable, if it finds that ". . . extraordinary and compelling reasons warrant such a reduction." *Id*. § 3582(c)(1)(A).

I do not find that Mr. Decoteau's recently diagnosed Stage 1 Chronic Obstructive Pulmonary Disease (COPD), concomitant asthma, and obesity constitute extraordinary and compelling reasons to reduce the Defendant's sentence. Mr. Decoteau is 39 years old and in good health. According to the Centers for Disease Control and Prevention, obesity and COPD put individuals at an increased risk of a severe course of illness if they contract COVID-19, but the

---

[1] The Defendant must first exhaust his administrative remedies under 18 U.S.C. § 3582(c)(1)(A)(i).

Defendant's weight barely classifies him as obese and his Stage 1 COPD is under control.[2] As recently as September 15, 2020, medical records classified him as overweight rather than obese. (Docket No. 95-1 at 4-5). Per an October 29, 2020 letter from his physician, the Defendant's BMI is now 31.9, which is a borderline obesity diagnosis.[3] (*Id.* at 2). Under the CDC guidelines, a BMI > 30 indicates increased risk of severe illness from virus that causes COVID-19.

Stage 1 COPD is the least advanced stage of the disease. Mr. Decoteau has responded well to bronchodilator medication. (Docket No. 95-2 at 1). October 2020 lung function studies from his medical records show that his lung volume is within normal limits; a spirometry (lung function) test showed a mild decrease in air flow volume, and diffusion (how efficiently oxygen passes from the lungs into the bloodstream) was only mildly decreased. (Docket No. 95-1 at 3). Medical records do not indicate that the Defendant is experiencing any respiratory symptoms from either COPD or asthma. (*Id.* at 4,7,11,13). According to the Mayo Clinic, COPD symptoms "often don't appear until significant lung damage has occurred. . ."[4]

Mr. Decoteau requests that I extend the March 19, 2021 self-report date to allow him an opportunity to be vaccinated. However, he has taken no action to obtain a vaccination since becoming eligible on February 8, 2021, despite the knowledge of his approaching self-report date to FCI Ft. Dix. While he claims he was not aware that he was eligible due to his medical conditions because of his young age, the information on state eligibility criteria is publicly

---

[2] CDC, CORONAVIRUS DISEASE 2019 (COVID-19): PEOPLE WITH CERTAIN MEDICAL CONDITIONS, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#copd (last visited on Mar. 16, 2021).
[3] Mr. Decoteau's attorney represented in a status report filed on March 15, 2021, that his client's BMI has increased further, but did not provide a figure. (See Docket No. 17 at 2-3).
[4] MAYO CLINIC, PATIENT CARE & HEALTH INFORMATION: COPD, https://www.mayoclinic.org/diseases-conditions/copd/symptoms-causes/syc-20353679 (last visited Mar. 16, 2021).

available and could easily have been obtained. This lack of diligence does not persuade me to further delay the start of his sentence.

Mr. Decoteau already received a below guidelines sentence—any further reduction would inappropriately minimalize the danger of his conduct. When federal law enforcement agents searched Mr. Decoteau's home, they discovered nine unregistered firearms, a bulletproof vest, and more than 1,200 rounds of ammunition. The weapons included assault rifles with high capacity magazines and "ghost guns"—guns "made from partially built frames, which are drilled and assembled into fully operational guns, thus evading serializing, registration, and purchasing regulations." (Docket No. 87 at 2-3).

Furthermore, I find that even if Mr. Decoteau's health did justify his release under 18 U.S.C. § 3582(C)(1)(A)(I), I could not issue such an order because he is not yet in custody and therefore cannot have exhausted his administrative remedies under § 3582(C)(1)(A).

## Conclusion

The Defendant's Motion for Compassionate Release (Docket No. 95) is ***denied, without prejudice***. Mr. Decoteau may renew his motion upon a change in circumstances at FCI Ft. Dix or his personal health.

**SO ORDERED.**

*/s/ TIMOTHY S. HILLMAN*
**DISTRICT JUDGE**